NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**SCOTT M. KERIN, OSB #965128**
Assistant United States Attorney
Scott.Kerin@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:23-CR-00159-SI |
| v. | **GOVERNMENT'S MOTION FOR PRETRIAL DETENTION** |
| KEVIN MARTINEZ-AVILA<br>and<br>ALLEN MOYA-VARGAS, | |
| **Defendants.** | |

The United States of America, through Natalie K. Wight, United States Attorney for the District of Oregon, and Scott M. Kerin, Assistant United States Attorney, hereby asks the Court to detain the defendants pending trial.

The defendants were working for a larger drug trafficking organization and are responsible for engaging in a conspiracy to distribute and possess with the intent to distribute approximately 150,000 counterfeit M30 pills manufactured with fentanyl and 3.2 kilograms of powdered fentanyl. Both defendants are illegal aliens from Honduras who were in deportation proceedings before being brough back into federal court. The defendants present a substantial

**Government's Motion for Pretrial Detention**                          Page 1

risk of non-appearance at future court proceedings and are a danger to the community. They should be detained.

A.     **Factual and Procedural Summary.**

The defendants are charged with engaging in a Conspiracy to Distribute and Possess with the Intent to Distribute 400 grams or more of a mixture and substance containing Fentanyl and Possession with the Intent to Distribute 400 grams or more of a mixture and substance containing Fentanyl, in violation of Title 21, United States Code, Section 841(a)(1), 841(b)(1)(A), and 846. The charges carry a mandatory minimum sentence of 10 years' imprisonment and a maximum term of Life imprisonment. At this point, the defendants are not "safety valve" eligible and are thus facing the mandatory minimum sentence.

Based upon information passed along from another law enforcement agency, investigators with the Westside Interagency Narcotics Team (WIN) learned that a drug courier from California was in the process of delivering a large load of fentanyl to somewhere within the greater Portland, Oregon metro area. WIN investigators were able to locate the courier's vehicle and followed him as he drove to a residence in Gresham, Oregon. WIN investigators watched the courtier stop at the residence, where they believed the drugs were unloaded. About an hour later investigators observed the courier drive away from the residence. Shortly after the courier left the residence, investigators also observed defendant Martinez-Avila drive away from the residence. Investigators stopped defendant Martinez-Avila's vehicle and searched it pursuant to a state warrant. Inside the car investigators found approximately 47 grams powdered fentanyl. A state search warrant was then executed on the Gresham residence. Inside the Gresham residence investigators found defendant Moya-Vargas. WIN investigators deployed a K9 drug detection dog inside the residence and the attached garage. Inside the garage the K9 drug

detection dog altered to the presence of narcotics. Based upon the K9 alert, investigators were able to find and seize multiple bags containing approximately 150,000 counterfeit M30 pills, known to be manufactured with fentanyl (fentanyl pills), and 3.2 kilograms of powdered fentanyl. On a phone seized from defendant Moya-Vargas, investigators found a video he made which recorded defendant Martinez-Avila and another individual removing the seized fentanyl pills from a car tire that was inside the garage. The defendants' voices were also captured on the video and they are heard discussing the drugs, their apparent "boss," how much money they are making, and how they plan to launder their money. By all appearances, the Gresham residence was being used as a "stash house" to unload and store fentanyl before it was then distributed to others. Based upon the WIN investigators experience, the substantial quantity of seized fentanyl indicates it was possessed for purposes of further distribution. Pictures of the seized fentanyl and tire are below:



///

**Government's Motion for Pretrial Detention**     **Page 3**

B.  **Applicable Law.**

   1.  **Rules of Evidence Do Not Apply at Detention Hearing**

The Federal Rules of Evidence do not apply in pretrial detention proceedings. Fed. R. Evid. 1101(d)(3); 18 U.S.C. § 3142(f). Accordingly, both the government and the defense may present evidence by proffer or hearsay. *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986); *see also United States v. Bibbs*, 488 F.Supp.2d 925, 925-26 (N.D.Cal. 2007).

   2.  **Rebuttable Presumption of Detention**

Under the Bail Reform Act, 18 U.S.C. § 3142, *et seq.*, which governs the detention of a defendant pending trial, the Court shall order a defendant detained if, after a hearing, it finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." Generally, the United States bears the burden of establishing danger to the community by clear and convincing evidence; risk of flight need only be proved by a preponderance of the evidence. *United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990); *Winsor*, 785 F.2d at 757.

Where there is probable cause to believe that the defendant committed a Title 21 narcotics offense and the maximum penalty for that offense is a term of imprisonment of 10 years or more, or a violation of Title 18, United States Code, Section 924(c), the law creates a presumption that no condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(3)(A) and (B). In such a case, the burden of proof shifts to the defendant to rebut the presumption of detention. *United States v. Carbone*, 793 F.2d 559, 560 (3rd Cir. 1986). The defendant's criminal charges in this case create a presumption of pretrial detention.

///

Concern about the safety of the community is not limited to concerns about violence; rather it is the *risk* that a defendant will continue committing crimes while on release, such as drug dealing, that warrants their continued detention as a danger to the community:

> [T]he language referring to the safety of the community refers to the danger that the defendant **might** engage in criminal activity to the detriment of the community. The committee intends that the concerns about safety be given a broader construction than merely danger of harm involving physical violence. This principal was recently endorsed in *United States v. Provenzano and Andretta*, in which it was held that the concept of 'danger' . . . extended to nonphysical harms such as corrupting a union. **The committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the "safety of any other person or the community."**

S.REP. NO. 98-225, 98th Cong., 1st Sess. (1983), *reprinted in* 1984 U.S.C.C.A.N 3182, 3195 (Bail Reform Act)(emphasis added); *see also United States v. Hare*, 873 F.2d 796, 798-99 (5th Cir.1989)(Congress has determined "that drug offenders pose a special risk of flight and dangerousness to society.").

The Senate Report further explained *why* they created the presumption that there was no condition or combination of conditions of release that will reasonably assure the appearance of drug dealers or the safety of the community:

> These [the crimes outlined in 18 U.S.C. § 3142(e)] are serious and dangerous federal offenses. The drug offenses involve either trafficking in opiates or narcotic drugs, or trafficking in large amounts of other types of controlled substances. It is well known that drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of criminal activity. Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and thus, **because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism**.

S.REP. NO. 98-225, 98th Cong., 1st Sess. (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3203 (Bail Reform Act) (emphasis added).

The presumption in favor of detention, as both a flight risk and danger to the community, does not vanish if a defendant comes forward with some evidence to rebut it, but rather it

remains an evidentiary factor to be evaluated. *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985); *see also United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992); *United States v. Rodriguez*, 950 F.2d 85, 88 (2nd Cir. 1991); *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989). Were the presumption to vanish, "courts would be giving too little deference to Congress' findings regarding this class." *United States v. Martir*, 782 F.2d 1141, 1144 (2nd Cir. 1986).

The degree of danger posed by a defendant charged with narcotics trafficking is critical. *United States v. Leon*, 766 F.2d 77, 81 (2nd Cir. 1985). To determine that degree and decide if a defendant should be detained pending trial, a judicial officer must look to the nature and circumstances of the crime charged; whether the crime involved violence or drugs; the personal history of the person, the seriousness of the danger posed by the person's release; and, the evidence of the individual's guilt. *Id*. Evidence of defendant's family ties in the area, residence in the community and employment history should have no bearing on the court's determination of dangerousness and cannot rebut the presumption that arises under the statute. *See* S. Rep. No. 225, 98th Cong., 1st Sess. 24 (1983) (minimizing community ties and pointing to the "growing evidence that the presence of this factor does not necessarily reflect a likelihood of appearance, and has no correlation with the question of the safety of the community.").

If the defendant proffers evidence to initially rebut the presumption of dangerousness or risk of non-appearance, the Court should then examine the following four factors in deciding whether release is appropriate:

(1) the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance . . . ;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including –

**Government's Motion for Pretrial Detention**                                                                 **Page 6**

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearances at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal . . . ; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

18 U.S.C. § 3142(g).

**C.  Factors Supporting Detention.**

The defendants should be detained pending trial as both a danger to the community and a risk of nonappearance. The defendants, who are connected to a larger drug trafficking organization, were directly responsible for possessing for purposes of further distribution approximately 150,000 fentanyl pills and 3.2 kilograms of fentanyl powder – a drug that is responsible for catastrophic levels of death and destruction throughout the community. The defendants are illegal aliens from Honduras who were in deportation proceedings before being brought back into federal court. If they were released, these defendants present an unacceptable risk of nonappearance at future court proceedings and are a danger to the community. They should be detained.

    **1.  Nature and Circumstances of the Offense.**

The defendants were directly responsible for possessing for purposes of further distribution approximately 150,000 fentanyl pills and 3.2 kilograms of fentanyl powder. Their residence was a "stash house" used for the storage and further distribution of fentanyl. Large scale drug dealers like the defendants are exactly the people Congress warned us about and why

they created the presumption of detention in these cases. Dealers like the defendants make their living from drug dealing and are prone to go back to it when they are released from custody. The nature and circumstances of the offense warrant their pretrial detention.

2. **Weight of the Evidence.**

The weight of the evidence against the defendants is extremely strong and supports their continued detention. Both defendants are solidly connected to the residence and one defendant recorded the video which shows his co-defendant, and another person, unloading the drugs in the garage. Both defendants are overheard on the video discussing the drugs, their apparent "boss," how much money they are making, and how they plan to launder their money. They should be detained.

3. **History and Characteristics of the Defendant.**

The history and characteristics of the defendant also warrants their pretrial detention. The defendants are illegal aliens from Honduras who were actively engaged in the distribution of fentanyl within the community. Both are facing long prison sentences and deportation from the United States. They should be detained.

4. **Nature and Seriousness of the Danger to the Community.**

The defendants' drug dealing activities, by themselves, are extremely serious. These defendants are responsible for possessing for the purposes of further distribution approximately 150,000 fentanyl pills and 3.2 kilograms of powdered fentanyl. Two (2) milligrams of fentanyl is considered a potentially lethal dose and DEA lab testing reveals that four (4) out of every 10 counterfeit M30 fentanyl pills contain a potentially lethal dose of fentanyl. Given the presumption of detention that comes along with the charges, Congress has recognized the very serious risk that drug dealers like the defendant pose to the community and their risk of going

back to drug dealing even while on pretrial release. Drug dealers selling fentanyl, which is killing large numbers of our fellow citizens, pose an unacceptable risk to the community and should be detained. There is simply no condition or combination of conditions that the Court can impose that will mitigate the risk that these defendants drug distribution poses to the community.

## Conclusion

For the reasons set forth herein, we respectfully request that the Court detain the defendants pending trial and find they pose an unacceptable risk of non-appearance at future court hearings and that their drug dealing activities also pose an unacceptable danger to the community.

We ask the Court to find that:

- The charged offenses create a rebuttable presumption in 18 U.S.C. § 3142(e) that no combination of conditions will (1) reasonable assure the safety of the community and (2) reasonably assure the appearance of the defendants as required.

- The defendants have not rebutted, by sufficient evidence to the contrary, the presumption of detention provided in 18 U.S.C. 3142(e).

- Furthermore, due to the nature of the offenses and the extreme dangers posed by the defendants' illegal trafficking of substantial quantities of fentanyl, there is no condition or combination of conditions that will reasonably assure the safety of other persons and the community if the defendants were released.

///

///

///

- Due to the weight of the evidence and the defendants' personal history and characteristics, including the potential sentences they are facing, Honduran citizenship, their illegal presence within the United States and substantial likelihood of eventual deportation, and ties to a larger criminal organization, no condition or combination of conditions will reasonably assure the appearance of the defendants at future court hearings as required if released from custody.

Based upon the above findings, the defendants should be detained pending trial.

Dated: May 19, 2023.

Respectfully submitted,

NATALIE K. WIGHT
United States Attorney

/s/ *Scott Kerin*

SCOTT M. KERIN, OSB # 965128
Assistant United States Attorney